**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Raymond WILLIAMS, Defendant–Appellant.**

**No. 00–1691.**

United States Court of Appeals, Sixth Circuit.

Feb. 6, 2003.

Before GUY and MOORE, Circuit Judges; and BECKWITH, District Judge.*

RALPH B. GUY, JR., Circuit Judge.

Defendant, Raymond Williams, was indicted in a six-count indictment and entered a guilty plea to possession with intent to distribute cocaine base and being a felon in possession of a firearm. The Rule 11 plea agreement set a 127–month cap on a custodial sentence and provided that the other four counts would be dismissed at the time of sentencing. At or near the time the plea was taken, the government and the defendant discussed possible future cooperation, but no agreement was reached. The Rule 11 agreement was silent on the subject of cooperation.

Williams subsequently decided to cooperate and appeared before a grand jury on December 8, 1998. At the beginning of his grand jury testimony the following colloquy took place between the AUSA and the defendant:

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

Q. Now, before proceeding I have to make sure that you, the Grand Jury, and I, have some basic understandings. First of all, you are currently a federal prisoner; is that correct?

A. Yes.

Q. You are serving a term of imprisonment; is that correct?

A. Yes, it is.

Q. On a federal drug charge; is that right?

A. Right.

Q. And your sentence was what?

A. Ten years.

Q. You have agreed to cooperate with the FBI and the U.S. Attorney's Office in their investigation of police officers; is that correct?

A. Yes, I have.

Q. And in return for your cooperation, you expect that the United States Attorney's Office, if you cooperate and are truthful, will seek a downward reduction of your sentence. Is that your understanding?

A. I'm not quite sure of that.

Q. Okay. Do you understand that a federal prisoner, even after he or she begins serving a term of imprisonment, may obtain a sentence reduction upon the motion of the government if the government believes that person has cooperated and provided substantial assistance? Do you understand?

A. Yes, I understand that.

Q. And do you understand that it has been agreed upon, if you do provide substantial assistance in this case, the government will seek to go to court to have your sentence reduced?

A. Yes.

Q. You understand that.

A. Yes, I do.

Q. You understand that the government's position in this regard is based on your truthful testimony.

A. Yes.

Q. You understand the operative word is "truthful."

A. Yes.[1]

In addition to testifying before the grand jury, Williams was debriefed by the FBI.

The defendant appeared for sentencing on May 26, 2000. Although one may speculate, no reason is given in the record for the long delay between plea and sentencing. At the sentencing hearing, the defendant was given an opportunity to withdraw his plea because the parties had been mistaken about the original guideline computations. In fact, the minimum guideline sentence Williams could receive was 135 months, not 127 months. Williams, however, declined to withdraw his plea.

Prior to the imposition of sentence, Williams was given his chance at allocution and stated to the court:

**THE DEFENDANT**: Yes, I do. Basically what Mr. Harris spoke about my criminal activities and my education, me trying to forward my education, that is correct. I do plan on doing something productive and more positive with my life so I can be out there and be for my children as far as, for their stability.

1. Although the grand jury transcript indicates that Williams said he was currently serving a 10–year jail sentence on a drug charge, that was not correct. He was being held in Milan FCI, but had not been sentenced pursuant to his guilty plea. We are puzzled by the AUSA's reference to action being taken after a defendant begins serving a term of imprisonment, since Williams had yet to be sentenced.

As far as why is this, the grand jury, testifying before the grand jury as well as giving my statements that I have cooperated with the FBI, I was told by [AUSA] Bob Caress [sic] that I would receive a downward departure. I was also informed by the Court at my last court appearance that upon, that the only way, Mr. Williams, you're going to get below this ten years is that you cooperate with the authorities.

I feel like I have cooperated with the authorities, and I feel as though a downward departure should be warranted. It's not for me to, to get aggression to the Court, whatnot, in this matter, but had I would have known that I was, would not have proceed to downward departure, I would not have cooperated until after—I would have cooperated, I, I have no problem with cooperating with the Government, but I would not have cooperated till after I would, would have been sentenced that way. I would have received—

**THE COURT:** Well, I think what I told you, Mr. Williams, if I told you anything, what I think I told you is that the Government has to recommend that to the Court, a downward departure.

**THE DEFENDANT:** I understand.

**THE COURT:** The Government—for whatever reason, the Government has determined that your cooperation did not amount to substantial cooperation and that it did not merit a downward departure. So I don't have, I don't have any latitude to depart below the bottom of the guideline range.

As I indicated, I will take your cooperation into account in fashioning a sentence within the guideline range.

**2.** At the time of sentencing, the grand jury transcript, including the exchange between defendant and AUSA Cares, was not available

Williams's cooperation was brought to the attention of the court, and the AUSA recommended that Williams be sentenced at the bottom of the guideline range. The trial judge acquiesced and Williams was given a 135–month custodial sentence.[2]

Defendant has now appealed and raises the following issue:

WHETHER THE DISTRICT COURT ERRED IN FINDING THAT IT DID NOT HAVE THE AUTHORITY TO DETERMINE WHETHER THE GOVERNMENT BREACHED ITS COOPERATION AGREEMENT WITH APPELLANT, WHERE THE GOVERNMENT FAILED TO FILE A 5K MOTION FOR DOWNWARD DEPARTURE, DESPITE HAVING BARGAINED AWAY ITS DISCRETION AND HAVING PROMISED TO MAKE THE SUBSTANTIAL ASSISTANCE MOTION IN RETURN FOR APPELLANT'S TRUTHFUL COOPERATION AND GRAND JURY TESTIMONY.

The government frames the issues before this court in the following language:

I. WHETHER THIS COURT IS WITHOUT JURISDICTION TO REVIEW THE GOVERNMENT'S DECISION NOT TO FILE A SUBSTANTIAL ASSISTANCE MOTION, AN ISSUE THAT WAS NOT PROPERLY LITIGATED OR PRESERVED IN THE DISTRICT COURT?

II. WHETHER THE GOVERNMENT BARGAINED AWAY ITS DISCRETION AND THEREBY INDUCED WILLIAMS TO PLEAD GUILTY BY MAKING AN UNEQUIVOCAL PROMISE TO MAKE A SUBSTANTIAL ASSISTANCE MOTION?

to either the district court or counsel in this case.

We state the issues exactly as the parties have framed them to illustrate that the government's restatement of the issues raises questions different from the one raised by the defendant. Our review of the record convinces us that the defendant has more properly framed the issue for review. We also conclude that the district judge did err at the sentencing hearing, and we remand for resentencing.

## I.

■ Despite our belief that defendant has properly framed the issue, we nonetheless begin with the first issue asserted by the government because it raises a jurisdictional question. In our view, Williams, during his allocution, clearly raised the issue of the government not living up to its bargain. Although perhaps not phrased in the same language a lawyer would use. Williams also clearly was asking the court for a downward departure below a 10–year sentence. Accordingly, we conclude that this issue is properly before us since it was raised in the district court.

## II.

■ The government argues that it "did not bargain away its discretion and induce Williams to plead guilty by making an unequivocal promise to make a substantial assistance motion." The problem with this statement is that, although true, it does not, as the government suggests, resolve the issue before this court. It is undisputed that there was no mention of cooperation or a substantial departure motion in the written plea agreement. But it was the clear import of the plea agreement that if Williams did nothing at all, he would receive a maximum sentence of 127 months. In an attempt to secure a lower sentence, Williams, after the plea was taken, agreed to cooperate. His subsequent

debriefing and grand jury appearance followed.

Before Williams began his substantive testimony before the grand jury, the government made a new and additional bargain with him. We have set forth hereinabove the colloquy which took place between the AUSA and Williams. We believe a fair reading of what was said indicates that the government would make a motion for a downward departure if the defendant cooperated and provided substantial assistance. If it ended there. we would resolve this appeal in favor of the government; but it does not end there. The AUSA went on to state that "the government's position in this regard is based on your *truthful testimony.*" (Emphasis added.) After Williams answered "yes," the AUSA added: "You understand the operative word is 'truthful.'" Williams again answered in the affirmative.

This is the totality of what occurred. Had cooperation been covered in the written plea agreement or even discussed before the court, we have no doubt that it would have been made clear to the defendant that the discretion to make a downward departure motion rested with the government, and that cooperation alone not amounting to substantial assistance would not result in a motion being filed. This was not made clear to the defendant during the brief discussion between the AUSA and Williams before the grand jury.

■ This brings us then to the issue as raised on appeal by the defendant, which asks whether the district judge erred in not exploring whether the government breached a new agreement it had made with the defendant *after* the Rule 11 plea was taken. When the judge responded to the defendant that he could do nothing unless the government made a downward departure motion, that was essentially

correct insofar as the Rule 11 plea was concerned. The court erred, however, perhaps because the matter was not presented as clearly as it might have been, when there was no exploration of the post-plea bargain.

In reaching the result we do in this case, we are influenced by the fact that the government makes no claim that Williams was other than truthful and forthcoming. Furthermore, Williams was held in prison for two years before being brought back for sentencing, while the government pursued its investigation of others using in part information provided by Williams. Since Williams had not been sentenced, he was held out of the general prison population during this period of time and was not allowed to pursue many of the avenues of rehabilitation and personal improvement afforded to sentenced prisoners. His reward for all of this was to end up with a sentence that was eight months longer than the one for which he originally bargained.

We want to make it clear that we do not view this result as any departure from or expansion of our previous "substantial assistance" jurisprudence. This case is unique in that it involves a bargain made between the government and the defendant outside the parameters of the written Rule 11 plea agreement. We also note that Williams has a bad prior criminal record and as the trial judge stated to him at sentencing: "[T]he government is giving you a big break on this ... had they not dropped the felon in possession in furtherance of a crime charge ... you would have been facing a mandatory 60 months on top of the sentence...." We only resolve the question of whether the court needs to take a look at the second bargain the government made with the defendant. We pass no judgment on what the result of that look should be. Even when the gov-

ernment makes a substantial assistance motion, the court is not bound to grant it.

Defendant's sentence is **VACATED** and the case is **REMANDED for** further proceedings consistent with this opinion.

MOORE, Circuit Judge, concurring.

I concur in the result and in the majority's analysis of the "new and additional bargain" that the government made with Williams before he "began his substantive testimony before the grand jury." Majority Op., *supra*, at 66. However, I write separately to acknowledge that the parties entered a separate oral cooperation agreement even earlier in the proceedings, at Williams's plea colloquy. On September 21, 1998, at Williams's plea colloquy, the government informed the court that, "although it's not in the agreement, we have offered Mr. Williams a chance to cooperate against some other individuals and possibly decrease his guideline range if he's able to do that." J.A. at 58. Williams indicated that he understood the cooperation agreement as the court described it: "if you cooperate, in other words, if you give the government information and cooperate and possibly testify before the grand jury or even at trial, ... the government might be willing to recommend a lower sentence." J.A. at 59. Although we cannot review the government's refusal to move for a downward departure pursuant to this earlier agreement because it retains the government's discretion, I write separately only to note that it appears that there was, in fact, an earlier oral agreement.